# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**In re:**

Shelby Farrell McCurnin, Jr.,                        Case No. 16-30093-KLP
      Debtor.                                         Chapter 7

**In re:**

Leah Christine McCurnin,                            Case No. 15-36551-KLP
      Debtor.                                         Chapter 7

Bruce H. Matson and
Peter J. Barrett, Trustees
individually and as
assignees of M&T BANK,
      Plaintiffs,


v.                                                   Adv. Pro. No. 17-04553-KLP

South Anna, Inc. and
Stephanie Jeter Tumlin,
      Defendants.

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on the motion of Defendants South Anna, Inc., and Stephanie Jeter Tumlin to dismiss the complaint (the "Complaint") filed by chapter 7 trustees Bruce H. Matson and Peter J. Barrett (collectively, the "Trustees"). For the following reasons,[1] the counts of the Complaint asserting claims under the Bankruptcy Code, Counts II, III(a),[2] and IV, will be dismissed for failure to state a claim upon which relief

---

[1] The Court is not required to state findings or conclusions when ruling on a motion to dismiss. See Fed. R. Civ. P. 52(a)(3), made applicable by Fed. R. Bankr. P. 7052.

[2] Count III of the Complaint appears to assert causes of action for avoidance of transfers under both the Bankruptcy Code and the Virginia Code. For clarity, the Court will refer to the cause of action for avoidance of transfers asserted under the Bankruptcy Code as Count III(a) and the cause of action for avoidance of transfers asserted under the Virginia Code as Count III(b).

can be granted.  The Court will abstain from hearing Counts I, III(b), V, and

VI, the remaining counts of the Complaint, which assert claims under

Virginia law.

## BACKGROUND

Leah Christine McCurnin ("Mrs. McCurnin") filed a voluntary petition

for relief under chapter 7 of the Bankruptcy Code on December 29, 2015, and

Peter J. Barrett was appointed to serve as trustee in her case.  Shelby Farrell

McCurnin ("Mr. McCurnin") filed his own voluntary chapter 7 petition for

relief on January 8, 2016, and Bruce H. Matson was appointed to serve as

trustee in his case.

Mr. McCurnin and Mrs. McCurnin (collectively "the Debtors") were, at

all relevant times, married and together owned all of the shares of Isis, Inc.

("Isis"), which they founded in 1998.[3]  Mr. McCurnin served as president and

CEO of Isis, and Mrs. McCurnin served as its treasurer, CFO, and secretary.

Defendant Stephanie Jeter Tumlin ("Tumlin") was a manager of Isis.  At all

relevant times, Tumlin was the sole owner of Defendant South Anna, Inc.

("South Anna" and, together with Tumlin, "the Defendants").[4]

The Trustees[5] initiated this adversary proceeding by filing a complaint

(the "Complaint") on December 29, 2017, asserting causes of action

---

[3] Isis is not a party to this proceeding.  There is no evidence or allegation that Isis has filed
bankruptcy or has been the subject of an involuntary petition in bankruptcy.
[4] All facts set forth herein are gleaned from the Complaint. *See infra* note 12.
[5] Although the Trustees are presumably proceeding as joint plaintiffs pursuant to Rule 20 of
the Federal Rules of Civil Procedure, Fed. R. Civ. P. 20, made applicable by Bankruptcy Rule
7020, Fed. R. Bankr. P. 7020, it is not clear how the Trustees intend to dispose of any
recovery that may be obtained or how they intend to deal with the related fees and expenses.

"individually and as assignees of M&T Bank."[6]  The Complaint alleges that the Debtors and Tumlin devised and executed a scheme to fraudulently transfer the assets of Isis to South Anna.[7]  The Trustees seek to avoid the transfers and recover the assets of Isis, or the value thereof, from South Anna and Tumlin pursuant to §§ 544, 548, and 550 of the Bankruptcy Code[8] and § 55-80 of the Virginia Code, Va. Code Ann. § 55-80.  The Trustees also seek a declaration that South Anna is liable as the successor in interest to and alter ego of Isis.  Finally, the Trustees seek to hold Tumlin liable for conspiring to fraudulently transfer the assets of Isis to South Anna.[9]

---

Neither case docket reflects the existence of an agreement between the Trustees.  The two bankruptcy estates are not being jointly administered.

[6] On December 14, 2017, the bankruptcy estates obtained an unconditional assignment from M&T Bank of a judgment M&T Bank obtained against Isis on February 26, 2016.  *See infra* text accompanying note 22.

[7] The counts in the Complaint can be summarized as follows:

> Count I - South Anna should be liable for the debts and liabilities of Isis as Isis's successor in interest;
> Count II – the transfer of the property of Isis to South Anna is an avoidable fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(A) and (B);
> Count III – the transfer of the property of Isis to South Anna is an avoidable fraudulent conveyance pursuant to 11 U.S.C. § 544(b)(1) and Va. Code Ann. § 55-80;
> Count IV – the avoided transfers are recoverable pursuant to 11 U.S.C. § 550(a);
> Count V – South Anna should be liable for Isis's debts as Isis's alter ego; and,
> Count VI – Tumlin conspired with the Debtors to fraudulently transfer the assets of Isis in violation of Va. Code Ann. §§ 18.2-499 and 500.

[8] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

[9] Count VI of the Complaint alleges that Tumlin conspired with the Debtors to fraudulently transfer the assets of Isis to South Anna in violation of Va. Code Ann. §§ 18.2-499 and 500, causing the Trustees to suffer damages.  Count VI does not, however, specify the relief being sought against Tumlin in connection with this allegation.  The only relief sought against Tumlin is found in 1) Count V of the Complaint (alter ego), which includes a paragraph (#85) alleging that "[e]ach of the defendants should be accountable for the debts of Isis," and 2) the prayer for relief contained in the final paragraph of the Complaint that seeks to recover the value of the transfers, costs incurred by the Trustees and "such other relief as may be just and proper" from the Defendants.

On January 31, 2018, the Defendants filed a motion to dismiss the

Complaint pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil

Procedure, Fed. R. Civ. P. 12(b)(1), (6),[10] for lack of subject matter jurisdiction

and for failure to state a claim (the "Motion").  On April 12, 2018, the Court

held a hearing on the Motion.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b)

and the general order of reference of the U.S. District Court for the Eastern of

Virginia dated August 15, 1984.[11]  Venue is appropriate in this Court

pursuant to 28 U.S.C. §§ 1409.

## FACTS

The Trustees allege the following facts.[12]  The Debtors formed Isis in

1998.  Isis operated as a consulting business specializing in writing,

implementing, and reselling accounting software for small to mid-sized

companies in and around the Richmond, Virginia, area.  The Debtors have

been and remain the sole shareholders of Isis, with Mr. McCurnin owning 49

---

[10] Made applicable by Bankruptcy Rule 7012(b), Fed. R. Bankr. P. 7012(b).

[11] The Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding.  *See Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-77 (1940) ("The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act . . . . The court has the authority to pass upon its own jurisdiction . . . .") (citations omitted)).

[12] When addressing a facial challenge to subject matter jurisdiction, the Court must accept the factual allegations of the complaint as true.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  Similarly, in addressing a motion to dismiss for failure to state a claim, a court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party."  *Rockville Cars, LLC, v. City of Rockville,* 891 F.3d 141, 145 (4th Cir. 2018).  *See infra* pp. 9-10.

percent and Mrs. McCurnin owning 51 percent.  In its first ten years, Isis experienced significant growth, with revenues of between $2.5 and $3 million per year and expansion to over 20 employees. Among other assets, Isis owned 80 to 100 computers, computer equipment, and a collection of office furniture, including desks, tables, chairs, cabinets, and cubicles.

Tumlin joined Isis in 1999 as a computer programmer, writing accounting software programs.  Several years later she was promoted to manager of development.  Her duties expanded to include managing Isis's team of eight to nine software developers as well as several employees of Isis's affiliate, Izida, LLC, which was located in Bulgaria.[13]  Tumlin became "third in command as far as managing the business" after the Debtors.[14]

Beginning in 2008, Isis's revenues fell and never recovered.  It faced increasing collection pressure and litigation from its creditors.  In October of 2014, its former landlord filed a complaint against Isis and the Debtors, as guarantors, in the Circuit Court for Henrico County, Virginia, seeking over $150,000 in unpaid rent.

In late 2014, the Debtors and Tumlin "devised a scheme to continue the business of Isis without its mounting debt."[15]  In January of 2015, the Debtors and Tumlin met to discuss the creation of a new business, to be owned by Tumlin, that would take over Isis's operations.  Over the next

---

[13] Izida, LLC, is 100% owned by Mr. McCurnin and was created to provide a less expensive workforce for Isis.  Complaint ¶ 17 and accompanying footnote.
[14] In ¶ 18 of the Complaint, the Trustees assert that this quotation was taken from a Rule 2004 examination of Tumlin.
[15] Complaint, ¶ 22.

several months, they created South Anna, identifying Tumlin as CEO and 100% owner of South Anna's stock. Isis's operations and employees were transferred to South Anna, which officially began operations on May 1, 2015, operating out of the same offices previously occupied by Isis. Tumlin made no capital contribution in exchange for her shares in South Anna.

Isis ceased operations in June of 2015, and its registration with the Virginia State Corporation was subsequently terminated. In August, Isis defaulted on its loan with M&T Bank, and in December, M&T Bank filed a complaint against Isis and the Debtors in the Henrico County, Virginia, Circuit Court. By order dated February 26, 2016, the circuit court granted M&T Bank judgment against Isis for $99,661.44, plus interest and late fees of $2,029, as well as attorneys' fees and costs (the "Judgment").[16]

South Anna solicited Isis's customers and arranged for most of them to enter into contracts with South Anna. One customer refused to execute a new contract, so South Anna continued to do work for that customer under the old Isis contract. With the former Isis employees, in their new roles as employees of South Anna, servicing the former Isis customers, South Anna became profitable immediately. From May through August, South Anna used Isis's property, including its computer equipment and furniture.[17] South Anna also used Isis's servicing credentials with Microsoft to service customers until it was able to obtain its own credentials.

---

[16] The suit was stayed as to the Debtors as a result of their bankruptcy filings.
[17] South Anna made a $5,000 payment to Isis for office equipment in August 2015.

By October of 2015, the Debtors' personal relationship had deteriorated, and Mr. McCurnin left Isis.[18]  On October 14, 2015, South Anna paid Isis $25,000 for computer equipment that South Anna had been using since May of 2015.  The value of the computer equipment "far exceeds the $25,000 'paid' to Isis."[19]

On December 29, 2015, Mrs. McCurnin filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and one week later Mr. McCurnin filed his own petition, completing the "final step in the scheme to continue Isis's business through South Anna [and] shed the personal guarantees [the McCurnins] had given to Isis's creditors."[20]  On his schedules, Mr. McCurnin listed over $480,000 of Isis's debt that he had personally guaranteed, including $145,000 for unpaid rent, $117,000 owed to M&T Bank, $50,000 owed to Microsoft, $50,000 owed to Wells Fargo Bank, and $25,000 owed to Windstream Communications.  Mrs. McCurnin listed similar personal guaranty obligations in her schedules.  Many of these creditors have filed proofs of claim in the Debtors' bankruptcies.

Mr. McCurnin listed his 49% interest in Isis as having a value of $147,000, from which the total value of Isis would be calculated as being close to $300,000.  "South Anna 'acquired' this full enterprise value for almost no consideration."[21]

---

[18] The Debtors are in the process of divorcing.
[19] Complaint, ¶ 45.
[20] Complaint, ¶ 46.
[21] Complaint, ¶ 50.

On December 14, 2017, M&T Bank executed an "Unconditional and Absolute Assignment of Judgment" (the "Assignment") wherein it assigned any and all interest in the Judgment to the Debtors' bankruptcy estates. The Assignment purports to assign "all of M&T's right, title, and interest in and to the Judgment, including all sums of money that may be obtained by means of or as a result of the Judgment." It further provides that the assignment is "unconditional, absolute and without consideration" and grants the bankruptcy estates the power and authority to "acknowledge satisfaction or to discharge and release the Judgment."[22]

## LEGAL STANDARDS AND POSITIONS OF THE PARTIES

Rule 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction is brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[23] In addressing a defendant's facial challenge to subject matter jurisdiction, a court must accept the factual allegations of the complaint as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Plaintiffs have the burden of proof in establishing jurisdiction. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

Counts II, III(a), and IV of the Complaint are proceedings to "determine, avoid or recover fraudulent conveyances" pursuant to provisions of the Bankruptcy Code and are therefore core matters. 28 U.S.C. § 157(b)(2)(H). If the facts as alleged state a colorable claim upon which relief

---

[22] Complaint, Ex. C.
[23] Made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), Fed. R. Bankr. P. 7012(b).

may be granted pursuant to §§ 544, 548 and 550 of the Bankruptcy Code,

then subject matter jurisdiction exists.[24]

Counts I, III(b), V, and VI of the Complaint are claims brought under

state law, over which the Court may exercise subject matter jurisdiction as a

proceeding "related to" a case under title 11.  28 U.S.C. § 157(c).  "Related to"

jurisdiction may exist where the outcome of the proceeding could conceivably

have an effect on the bankruptcy estates being administered.[25]

Rule 12(b)(6).  A motion to dismiss for failure to state a claim upon

which relief can be granted is brought under Rule 12(b)(6).  When considering

a motion under Rule 12(b)(6), the Court must accept as true the well-pleaded

factual allegations in the complaint, and all reasonable inferences must be

drawn in favor of the complaining party:

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face."  A claim has facial
> plausibility when the plaintiff pleads factual content that allows

---

[24] *See Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 453 (4th Cir. 2012) ("In short, subject matter jurisdiction relates to a federal court's power to hear a case, and that power is generally conferred by the basic statutory grants of subject matter jurisdiction, such as 28 U.S.C. § 1331 or 28 U.S.C. § 1332.  If a plaintiff . . . pleads a colorable claim 'arising under' the Constitution or laws of the United States, he invokes federal subject matter jurisdiction, and deficiencies of the claim should be addressed by the other mechanisms provided by the federal rules." (citations omitted)).

[25] The Third Circuit has stated that a civil proceeding is "related to" a bankruptcy case if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  The Fourth Circuit has adopted the *Pacor* test, most recently reaffirming its position in *MDC Innovations, LLC v. Hall*, 726 F. App'x 168, 171 (4th Cir. 2018).  *See also Marshall & Ilsley Trust Co., N.A. v. Lapides (In re Transcolor Corp.)*, Adv. No. 05-9103-JS, 2007 WL 2916408, at *10 (Bankr. D. Md. Oct. 5, 2007) (holding that the subject matter jurisdiction of the bankruptcy court extends to only those disputes "related to" the bankruptcy estate that affect the amount of property available for distribution or the allocation of property among creditors).

> the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  *See also Rockville Cars, LLC v. City of*

*Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  Under these standards, the

Court must accept the allegations of the Complaint as true; however, any

count of the Complaint that fails to state a valid claim must be dismissed.

The Defendants assert that the Trustees have no authority under the

Bankruptcy Code to pursue claims on behalf of non-debtor entities, in this

case Isis, or a creditor of the bankruptcy estates, in this case M&T Bank.[26]  In

essence, the Defendants challenge the standing of the Trustees.  Standing

must be proven by the party invoking federal jurisdiction.  *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560-61 (2004); *Netro v. Greater Baltimore Med. Ctr.*,

891 F.3d 522, 525 (4th Cir. 2018).

Generally, a motion to dismiss for lack of standing is governed by Rule

12(b)(1), "because standing is a jurisdictional matter."  *Ballentine v. United*

*States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted).  However, the

Fourth Circuit has recognized the existence of "statutory standing," which is

"a concept distinct from Article III and prudential standing. Statutory

standing . . . focuses on whether the plaintiff is a member of the class given

authority by a statute to bring suit."  *Wynne v. I.C. System, Inc.*, 124 F.

---

[26] One of the principles applicable when determining whether a plaintiff has standing is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties . . . ."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 485 (3d Cir. 1998).

Supp.3d. 734, 743 (E.D. Va. 2015) (citations omitted).  In *CGM, LLC v.*

*BellSouth Telecomm., Inc.*, 664 F.3d 46 (4th Cir. 2011), the Fourth Circuit

held that "a dismissal for lack of statutory standing is effectively the same as

a dismissal for failure to state a claim."  *Id*. at 52.[27]

Here, the Defendants argue that the Trustees do not have standing

under the Bankruptcy Code to pursue their claims.  This is not a

constitutional or prudential standing argument but rather an argument that

the Trustees lack statutory standing, i.e., that the provisions of the

---

[27] The concept of statutory standing was explained in depth by the Fourth Circuit in *CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46 (4th Cir. 2011):

> Constitutional standing and prudential standing are well-covered ground. To possess constitutional standing, a plaintiff must be injured by the defendant, and a federal court must be able to redress the injury. *See, e.g., In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008). Prudential standing encompasses several judicially-created limits on federal jurisdiction, "such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

> Less well-known is the concept of statutory standing, which is perhaps best understood as not even standing at all. Statutory standing "applies only to legislatively-created causes of action" and concerns "whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L.Rev. 89, 91 (2009). This Court has framed the statutory standing inquiry as whether the plaintiff "is a member of the class given authority by a statute to bring suit...." *In re Mutual Funds*, 529 F.3d at 216 (examining "statutory standing" under ERISA separately from Article III standing and deeming statutory standing to exist). As the Third Circuit summed it up in *Graden v. Conexant Sys., Inc.*:

> > Though all are termed "standing," the differences between statutory, constitutional, and prudential standing are important. Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing. Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury.

> 496 F.3d 291, 295 (3d Cir.2007) (internal citations omitted).

664 F.3d at 52.

Bankruptcy Code do not confer upon the Trustees the power to make the claims they assert in the Complaint.  Therefore, the Motion, to the extent that it seeks dismissal for lack of statutory standing, is properly analyzed under Rule 12(b)(6) as a failure to state a claim.  *See Kerns v. United States*, 585 F.3d at 193, in which the Fourth Circuit compared the procedural protections of Rules 12(b)(1) and 12(b)(6), and concluded that "[i]n short, when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) . . . ."[28]

Alternatively, the Defendants claim that the successor liability and alter ego counts should be dismissed pursuant to Rule 12(b)(6) because the Trustees have failed to allege any corporate affiliation or commonality of ownership between Isis and South Anna.  They argue that the fraudulent transfer counts should be dismissed for failure to allege a transfer of property of the Debtors and that the business conspiracy count should be dismissed for failure to allege an independent crime or tort upon which a claim of conspiracy may be based.

<u>Abstention</u>.  Finally, to the extent that the Trustees are allowed to proceed, the Defendants argue that the case should be litigated in state court.

---

[28] "Because Plaintiffs are asserting a claim under § 548, the Court has core jurisdiction. No cause of action exists under § 548 outside of bankruptcy. It is more appropriate to determine whether the Complaint states a § 548(a) claim upon which relief can be granted and whether Plaintiffs have standing to assert such a claim than to dismiss based on a lack of subject matter jurisdiction."  *Cambridge Tempositions, Inc. v. Cassis* (*In re Cassis*), 220 B.R. 979, 982 (Bankr. N.D. Iowa 1998) (creditors lack standing to assert claim under § 548 to avoid fraudulent transfer).

They urge that because the Judgment was issued by a state court, "any action to collect on that judgment should be brought in state court." The Court interprets this as a request for judicial abstention pursuant to 28 U.S.C. § 1334.

## **DISCUSSION**

### *The Assignment*

The Trustees maintain that they have standing to sue South Anna and Tumlin by virtue of the "unconditional" assignment of the claim of a creditor, M&T Bank. The Assignment is attached as an exhibit to the Complaint and contains the following language:

> On February 26, 2016, judgment was entered in the Circuit Court for the County of Henrico, Case No. CL15-3264-00 in favor of M&T and against the defendant ISIS, Inc. in the principal amount of $99,661.44 plus interest and late fees . . . .
>
> M&T hereby assigns, without recourse and without representation or warranty of any kind, to the Estates, all of M&T's right, title, and interest in and to the Judgment, including all sums of money that may be obtained by means of or as a result of the Judgment. Such assignment is unconditional, absolute and without consideration. From and after the date hereof, the Estates, by and through their respective trustees, shall have full power and authority, at the expense of the Estates, to use all lawful means for the recovery of the money due or to become due on the Judgment and to acknowledge satisfaction or to discharge and release the Judgment.

The Trustees state that "M&T could have independently pursued the same claims now advanced by the Trustees against the Defendants to satisfy the

debt owed to it by the Debtors, but instead fully assigned those rights to the Trustees for the benefit of the estates as a whole."[29]

The Defendants argue that the Trustees have no authority under the Bankruptcy Code to pursue the claim of M&T Bank, citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972). In *Caplin*, the Supreme Court held that a bankruptcy trustee does not have standing to pursue an action against a third party that could not have been maintained by the debtor. *Id.* at 428 (a trustee in bankruptcy is not entitled to "collect money not owed to the estate.").[30] However, the Fourth Circuit distinguished *Caplin* in *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507 (4th Cir. 2005). In *Bogdan*, the Fourth Circuit held that a bankruptcy trustee did have standing to assert a creditor's claim against a third party when the assignment to the trustee was unconditional, because as a result of that unconditional assignment, the claim had become property of the bankruptcy estate. *Id.* at 512. *See also Arrowsmith v. Mallory (In re Health Diagnostic Lab., Inc.)*, Adv. Pro. No. 16-03271-KRH, 2017 Bankr. LEXIS 2230, at *80-81 (Bankr. E.D. Va. Aug. 9, 2017) (holding that the liquidating trustee had standing to pursue unconditional assigned claims from various creditors).

---

[29] Memorandum in Opposition to Defendants' Motions to Dismiss (Dkt. 11), p. 3.

[30] *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), was decided under the Bankruptcy Act of 1898. Since that time, courts have concluded that *Caplin* remains the law under the Bankruptcy Code. *Gordon v. Harman (In re Harman)*, 520 B.R. 906, 911 (Bankr. N.D. Ga. 2014) ("Subsequent courts . . . have concluded that the statutory authority on which Plaintiff now relies—11 U.S.C. § 544(a)—was embodied in the statutory scheme at the time of *Caplin*.").

M&T Bank, as a creditor of Isis, had standing under state law to pursue a claim against South Anna and Tumlin.[31]  By giving the Trustees the unconditional Assignment, M&T Bank relinquished its rights to the claim, and the Trustees, who now stand in place of M&T Bank, may pursue the claim for the benefit of the bankruptcy estates as if they were M&T Bank. *See In re Bogdan*, 414 F.3d at 511 ("By taking unconditional assignments from the creditors, the trustee, as assignee, is making his claim on behalf of Bogdan's estate, not on behalf of the mortgage lenders."). Any recovery received on account of the claim is property of the bankruptcy estates that will be distributed among their creditors.  *See In re Health Diagnostic Lab., Inc.*, 2017 Bankr. LEXIS 2230, at *79 (holding that any recovery that the trustee might receive from pursuing the assigned claims would be applied pursuant to the plan).  Accordingly, the Trustees have standing to pursue the M&T Bank claim for the benefit of the two bankruptcy estates.[32]

---

[31] "Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal . . . given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns be void."  Va. Code Ann. § 55-80. This statute authorizes a creditor to avoid a debtor's conveyance of property if made with intent to delay, hinder or defraud creditors.  *See Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 218 (4th Cir. 1994); *Docter, Docter & Salus v. United States (In re Abingdon Realty Corp.)*, 21 B.R. 290, 296 (Bankr. E.D. Va. 1982).

[32] The Defendants have not challenged the validity of the Assignment other than to point to the failure of the Trustees to allege that it has been recorded in the local courthouse, an omission that does not render the Complaint deficient.  However, under the reasoning in *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507 (4th Cir. 2005), in particular that an unconditional assignment and abandonment of the claim by the creditor results in "no potential for duplicative and inconsistent litigation," *id.* at 412, language in the Assignment that it is assigning "the Judgment" raises the question of whether the Assignment is, in fact, unconditional.  The Judgment is against Isis only. The Complaint states that the Debtors personally guaranteed the debt to M&T Bank; however, the Assignment does not address M&T Bank's claim against the guarantors other than to state that the Trustees shall have "full power and authority . . . to use all lawful means for the

*Causes of action under the Bankruptcy Code*

In Counts II, III(a), and IV the Trustees seek to avoid and recover the transfer of assets from Isis to South Anna pursuant to §§ 548(a)(1)(A) and (B)[33] and 544(b)(1)[34] of the Bankruptcy Code.[35]  In order to establish an

---

recovery of the money due or to become due on the Judgment and to acknowledge satisfaction . . . ."  If the Assignment includes the right to collect on the guarantees, and it may be construed as such, then it is absolute and unconditional; if not, then the Fourth Circuit's fear of "duplicative and inconsistent litigation" would be realized by the creditor's (in this case, M&T Bank's) efforts to collect the debt from guarantors (who possess indemnification rights against the principal) occurring simultaneously with the Trustee's attempt to collect the same debt from the principal.  Furthermore, if M&T Bank retained its rights in connection with the guarantees, then any funds recovered by the Trustees on the judgment must be credited to the balance owed pursuant to the Debtors' guarantees, for it is axiomatic that a creditor cannot collect twice on the same claim.

Notwithstanding the Trustees' assertion that M&T Bank has a right to share pro rata in any recovery by the Trustees, it is difficult to see how M&T Bank has any remaining right to recover on a claim that it has unconditionally and absolutely transferred to another party.  Nevertheless, that issue is not before the Court at this time, and for purposes of the Motion, which requires that reasonable inferences be construed in favor of the Trustees, the Court will treat the Assignment as unconditional and inclusive of the right to collect from the guarantors.

[33] 11 U.S.C. § 548(a) provides that:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

[34] 11 U.S.C. § 544(b)(1) provides that:

16

avoidance action under § 548(a)(1)(A),(B) and § 544(b)(1), a plaintiff must show, in part, that there was a "transfer . . . of an *interest of the debtor* in property."  *See* 11 U.S.C. §§ 548(a)(1)(A) and (B) and 544(b)(1) (emphasis added).  The Trustees assert that the transfer of Isis's assets to South Anna constituted a transfer of an interest in property of the Debtors.  While "transfer" is defined in § 101(54) of the Bankruptcy Code, "interest of the debtor in property" is not.[36]

Under § 541(a)(1) of the Bankruptcy Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  The determination of what constitutes property of the estate is a matter of federal bankruptcy law; however, the extent of a debtor's interests in property is determined by applicable state law. *See Butner v. United States*, 440 U.S. 48, 54-55 (1979)).

Under Virginia law, a corporation is a legal entity separate and distinct from its stockholders. *Barnett v. Kite,* 624 S.E.2d 52, 55 (Va. 2006).[37] "It is well accepted that a filing by an individual who is an owner of a

---

(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under 502(e) of this title.

[35] To the extent a transfer is avoided under § 550(a) of the Bankruptcy Code, the Trustees are permitted to seek recovery of the property transferred from the initial transferee or any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a).

[36] Courts have determined that "property belongs to the debtor . . . if the transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors."  *See Arrowsmith v. Lemberg Law, LLC (In re Health Diagnostics Lab, Inc.)*, 571 B.R. 182, 195 (Bankr. E.D. Va. 2017) (citing *In re Merchants Grain, Inc.*, 93 F.3d. 1347, 1352 (7th Cir. 1996)).

[37] "The whole corporate concept would be meaningless if such were not the case."  *Dana v. 313 Freemason*, 587 S.E.2d 548, 553 (Va. 2003).

17

corporation brings into the estate only his ownership interest and not the assets of the corporation." *In re Young*, 409 B.R. 508, 513 (Bankr. D. Idaho 2009); *see also Cadlerock Joint Venture II L.P. v. Robbins*, Civ. Action No. 3:08CV-365-S, 2009 WL 151695, at *2 (W.D. Ky. Jan. 21, 2009), *Wynne v. Streetman (In re Russell)*, 121 B.R. 16, 17–18 (Bankr. W.D. Ark. 1990) (assets of corporation are not included in individual shareholder's bankruptcy estate); 2 Collier on Bankruptcy ¶ 101.30, [3], at 101–139 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009).

The Debtors in this case were Mr. McCurnin and Mrs. McCurnin, not Isis. The Debtors owned the shares of Isis, not its assets. The Complaint does not allege that either of the Debtors transferred any of their shares in Isis or any of the assets of Isis. The shares of stock in Isis are assets of the bankruptcy estates, but the assets of Isis are not, nor have they ever been, the property of the Debtors. Applying the plain language of §§ 548(a)(1) and 544(b)(1) to the facts alleged in the Complaint, there was no transfer of an interest of property of the Debtors to South Anna or Tumlin, an element required by both §§ 548(a)(1) and 544(b)(1).

Other courts have recognized that there must be a depletion of the estate in order to establish a cause of action under § 548.

> There must be a depletion of the estate for there to be an avoidable transfer under § 548 or § 549. *In re Jarax Int'l, Inc.,* 164 B.R. 180, 185 (Bankr. S.D. Fla.1993). Ownership of stock in a corporation does not mean that the corporation is property of the estate. *In re Peoples Bankshares, Ltd.,* 68 B.R. 536, 539 (Bankr. N.D. Iowa 1986). The extent of a debtor's interest in property is determined by state law. *In re Cedar Rapids Meats, Inc.,* 121 B.R. 562, 567 (Bankr. N.D. Iowa

1990). Technical, legal distinctions between corporations and shareholders will be respected in bankruptcy cases. *Peoples Bankshares,* 68 B.R. at 539. A debtor's property interest as a shareholder of a corporation is limited to rights represented by the stock certificates. *Id.* Dismissal of a § 548(a) claim was affirmed in *In re Miner,* 185 B.R. 362, 367 (N.D. Fla. 1995), *aff'd,* 83 F.3d 436 (11th Cir.1996), where corporate property was transferred and the debtor was a shareholder of the corporation. The court concluded that because the debtor had no interest in the property transferred, no § 548(a) claim existed as a matter of law. *Id.*

*Cambridge Tempositions, Inc. v. Cassis (In re Cassis*), 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998) (fraudulent transfer of corporation's major asset could not be avoided in bankruptcy case filed by corporation's president and chief operating officer since asset was owned by corporation and not by debtor).[38] This is a corollary to § 548's requirement that property of the estate be transferred, for if no property of the estate is transferred, then the estate has not been depleted.  Because the assets of Isis were not property of the bankruptcy estates, there was no depletion of the estate upon their transfer.

In failing to show a transfer of property of the Debtors, the Trustees have not established all the elements of §§ 548(a)(1) and 544(b)(1) and thus have not stated a claim upon which relief may be granted pursuant to those sections.  For the same reason, the Trustees do not have statutory standing to assert causes of action under §§ 548(a)(1) and 544(b)(1) on behalf of Isis because those sections do not give bankruptcy trustees the authority to avoid

---

[38] See also *E.A. Martin Machinery Co. v. Williams* (*In re Newman*), 875 F.2d 668, 670-71 (8th Cir. 1989) (a transfer of partnership property could not support an avoidance claim under § 549(a) in an individual Chapter 7 case. Assets held by the partnership were not included in the debtors' bankruptcy estate).

transfers of property interests of nondebtors. Accordingly, Counts II, III(a), and IV must be dismissed.[39]

*State Law Claims*

Counts I, III(b), V, and VI assert causes of action under Virginia law. As the Court has already stated, these claims do not "arise under" the Bankruptcy Code, nor do they "arise in" a bankruptcy case.[40] Nevertheless, because these claims may result in a recovery for the bankruptcy estates, they are related to the Debtors' bankruptcy cases. *See* 28 U.S.C. § 157(c)(1). Thus, the Court may exercise "related to" jurisdiction.

Whether the Court should exercise "related to" jurisdiction in this case is another question. A determination that a bankruptcy court has "related to" jurisdiction is not dispositive of whether the court should exercise jurisdiction. *Hagan v. Lawyers Title Insurance Corp. (In re LandAmerica Fin. Grp., Inc.)*, Adv. No. 10-03168-KRH, 2011 WL 203986, at *3 (Bankr. E.D. Va. Jan. 21, 2011). Under 28 U.S.C. § 1334, the Court may abstain from

---

[39] The Trustees claim that the transfer of assets of Isis was tantamount to a transfer of property of the Debtors because it resulted in the diminution of the value of the Debtors' equity interests in Isis. Not only does this argument fail to adequately address the fact that the stock in Isis, which represents the ultimate depository of any rights to the equity, remains in the Debtors' estates, it also overlooks that the Complaint contains no such allegation. On the contrary, the Trustees allege that Isis had a market value of $300,000 with debts of no less than $480,000, meaning that there was no equity in Isis to diminish.

[40] A civil proceeding "arises under" the Bankruptcy Code when "federal law creates the causes of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Sharif v. IndyMac Bank (In re Sharif)*, 411 B.R. 276, 280 (Bankr. E.D. Va. 2008) (quoting *Poplar Run Five L.P. v. Va. Elec. & Power Co. (In re Popular Run Five L.P.)*, 192 B.R. 848, 854-55 (Bankr. E.D. Va. 1995)). A civil proceeding "arises in" a bankruptcy case when it is "not based on any right expressly created by [the Bankruptcy Code], but nevertheless would have no existence outside of the bankruptcy." *Sharif*, 411 B.R. at 280 (quoting *Bergstrom v. Dalkon Shield Claimants Trust (In re A. H. Robins Co., Inc.)*, 86 F.3d 364, 372 (4th Cir. 1996)).

hearing the surviving counts of the Complaint.  That section provides, in

pertinent part:

> [N]othing in this section prevents a district court in the
> interest of justice, or in the interest of comity with the
> State courts or respect for State law, from abstaining from
> hearing a particular proceeding arising under title 11 or
> arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).  The dismissal of the Trustees' avoidance claims under

the Bankruptcy Code leaves only state law causes of action for adjudication.

The Court must decide whether in the interest of justice, or "in the interest of

comity with the State court or respect for State law," it should exercise its

discretion to abstain from hearing the state law claims.

A bankruptcy court has considerable discretion when deciding whether

to abstain.  *Kepley Broscious, PLC v. Ahearn (In re Ahearn)*, 318 B.R. 638,

644 (Bankr. E.D. Va. 2003).[41]  In the past, this Court has based a decision to

abstain on various equitable considerations including the following factors:

> (1) the court's duty to resolve matters properly before it;
> (2) the predominance of state law issues and non-debtor
> parties; (3) the economical use of judicial resources; (4)
> the effect of remand on the administration of the
> bankruptcy estate; (5) the relatedness or remoteness of
> the action to the bankruptcy case; (6) whether the case
> involves questions of state law better addressed by the
> state court; (7) comity considerations; (8) any prejudice to
> the involuntarily removed parties; (9) forum non
> conveniens; (10) the possibility of inconsistent results;
> (11) any expertise of the court where the action
> originated; and (12) the existence of a right to a jury trial.

---

[41] The mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) are not applicable because
an action has not already been commenced in state court.  *See Seven Springs, Inc. v.
Abramson (In re Seven Springs, Inc.)*, 148 B.R. 815, 817 (Bankr. E.D. Va. 1992).

*Id*. (quoting *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001)).[42]

Moreover, ". . . the Court is free to consider these factors as it deems

appropriate in the full exercise of its discretion." *LandAmerica*, 2011 WL

203986, at *6.

Applying these factors to this case leads the Court to conclude that it

should abstain.  Counts I, III(b), V and VI involve purely state law claims

that are more appropriately addressed by the state court.  First, but for the

Assignment of M&T Bank's Judgment, the Trustees would have no standing

to pursue a fraudulent conveyance action.  M&T Bank, if it had retained the

Judgment, would have been required to pursue its claims against Isis in state

court.  In this instance, the Trustees should have no greater rights than M&T

Bank, including in their choice of forum.[43]

Second, if the Trustees are successful in their action under § 55-80,

avoidance of the fraudulent transactions, rather than an award of damages,

is the only remedy available under Virginia law. *La Bella Dona Skin Care,*

*Inc. v. Belle Enter., LLC*, 805 S.E.2d 399 (Va. 2017).

---

[42] A similar twelve factor test was employed by this Court in *McCarthy v. 88 La Gorce, LLC (In re El-Atari)*, Adv. No. 11-01404-BFK, 2012 WL 404947 (Bankr. E.D. Va. February 8, 2012).  In *El-Atari*, the Court noted that after dismissing the counts asserting claims under the Bankruptcy Code, only state law non-core causes of action remained, the primary factor leading the Court to recommend discretionary abstention.  *Id*. at * 5 ("Most importantly, if the Court accepts the recommendation as to the core claims . . . there will only be State law, non-core claims left in the case.  Accordingly, the Court recommends that the District Court abstain from hearing Count II [breach of contract] pursuant to 28 U.S.C. § 1334(c)(1).").  This case is similar to *El-Atari* in that, after dismissal of the claims asserted under the Bankruptcy Code, only state law non-core causes of action remain.

[43] Among the factors that may be considered when deciding whether to abstain pursuant to § 1334(c)(1) is the likelihood that the proceedings were commenced in bankruptcy court due to forum shopping.  *In re El-Atari*, 2012 WL 404947, at *5.  The Court does not consider this factor to favor the Trustees.

> Code § 55–80, however, does not impose liability upon the
> participants of a fraudulent conveyance. The statute
> merely "renders void every conveyance or transfer made
> 'with intent to delay, hinder or defraud creditors ... of or
> from what they are or may be lawfully entitled.' " *Cheatle
> v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212,
> 360 S.E.2d 828, 830 (1987) (quoting Code § 55–80). This
> remedy returns the fraudulently conveyed assets to the
> transferor, but, as a general rule, it does not authorize "a
> court to award an *in personam* judgment when [the
> transaction] is set aside." *Mills v. Miller Harness Co.*, 229
> Va. 155, 158, 326 S.E.2d 665, 667 (1985).

*Id.* at 256.  A recovery of assets fraudulently conveyed by Isis would

primarily benefit the creditors of nondebtor Isis and would only indirectly

benefit the creditors of the Debtors' bankruptcy estates.[44]

Virginia law requires payment of a corporation's creditors before assets

of the corporation may be disbursed to its shareholders, who in this case are

the Debtors.  *See Marshall v. Fredericksburg Lumber Co.*, 173 S.E. 553 (Va.

1934) ("[W]here there are existing creditors of a corporation the stockholders

will not be permitted, as against those creditors, to withdraw the assets of

the corporation without consideration . . . . We repeat that a stockholder is

not entitled to a share of the capital assets of a corporation until the debts

---

[44] The Trustees argue that any recovery received by virtue of the Assignment will benefit the
Debtors' creditors who are, for the most part, the same creditors as those of Isis.  The Court
takes judicial notice of the claims registers filed in the Debtors' cases.  *See Ammini v.
Labgold (In re Labgold)*, 532 B.R. 276, 280 n.1 (Bankr. E.D. Va. 2015) ("The Court can take
judicial notice . . . of the matters contained in its own docket").  Both claims registers include
claims filed by creditors other than those identified by the Trustees as also having claims
against Isis.  Any property received by the Trustees must be distributed first to the costs of
administration and then to creditors holding allowed unsecured claims, with claims of a
similar kind to be made pro rata. 11 U.S.C. § 726(a) and (b).  Accordingly, some creditors of
Isis may receive recoveries on their guarantee claims through the bankruptcy estates, as
may creditors who are unrelated to Isis.

have been paid.").[45]   The Virginia Supreme Court has held that when a

fraudulent conveyance is set aside under Va. Code Ann. § 55-80, the

recovered proceeds must be distributed to creditors ratably.  *Mills v. Miller*

*Harness Co.,* 326 S.E.2d 665, 667 (Va. 1985).  Based on this statutory

distribution scheme, the state court is empowered to protect the interests of

the creditors of Isis,[46] but the Trustees' duty is to maximize the assets of the

bankruptcy estate in order to maximize recovery for the Debtors' creditors.[47]

This factor favors state court adjudication, as the interests of the corporate

creditors receive priority under Virginia law.

---

[45] When a corporation has been terminated by operation of law, as the Trustees allege with respect to Isis, Va. Code Ann. § 13.1-753 requires the following of its directors:

> [T]he properties and affairs of the corporation shall pass automatically to its directors as trustees in liquidation. The trustees then shall proceed to collect the assets of the corporation; sell, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders; pay, satisfy and discharge its liabilities and obligations; and do all other acts required to liquidate its business and affairs. After paying or adequately providing for the payment of all its obligations, the trustees shall distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.

The Debtors are the directors of Isis and under Virginia law are designated to act as its trustees in liquidation.  There is nothing indicating that the Debtors have undertaken these responsibilities; indeed, if the allegations set forth in the Complaint are true, one would not expect such action by the Debtors.  Likewise, the Trustees have not sought authority to operate Isis pursuant to 11 U.S.C. § 721, nor is there any indication that they have undertaken the responsibilities set forth in § 13.1-753.

[46] Va. Code Ann. § 13.1-747 provides in pertinent part:

> The circuit court . . . shall have full power to liquidate the assets and business of the corporation at any time after the termination of corporate existence, pursuant to the provisions of this article upon the application of any person, for good cause, with regard to any assets or business that may remain.

The statute further provides the state court with the powers necessary to accomplish this missive:

> A court in a proceeding brought to dissolve a corporation may issue injunctions, appoint a receiver or custodian pendente lite with such powers and duties as the court may direct, take other action required to preserve the corporate assets wherever located, and carry on the business of the corporation until a full hearing can be held.

[47] *In re Farmer*, 786 F.2d 618, 621 (4th Cir. 1986) ("The trustee acts for all the creditors so as to maximize the distribution from the estate." (quoting *In re Overmyer*, 26 B.R. 755, 758 (Bankr. S.D.N.Y. 1982))).

The remaining *Ahearn* factors also weigh in favor of abstention.  State law issues predominate over bankruptcy issues, including the Defendants' challenges to the adequacy of the Complaint's state law allegations.  These issues are better addressed by the state court.  *See Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 350-351 (E.D. Va. 2006) (abstaining under Section 1341(c)(1) where state law issues predominate).  Having the state court finalize proceedings involving Isis will enable this Court to then properly assess the claims filed for corporate debts guaranteed by the Debtors, thereby reducing the possibility of inconsistent results.  The state court's expertise in dealing with such matters should lead to a quicker resolution of the proceedings and a more economical use of judicial resources, which benefits the bankruptcy estates.  Finally, comity considerations favor deferring the liquidation of a non-debtor entity to the state court.

## CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' Motion to dismiss Counts II, III(a), and IV of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court will abstain from hearing Counts I, III(b), V, and VI of the Complaint pursuant to 28 U.S.C.§ 1334(c)(1), and those Counts will be dismissed.

A separate order shall be issued.

Date:  September 24, 2018

_____
/s/ Keith L. Phillips
United States Bankruptcy Judge

Entered on Docket:  September 24, 2018

Copies:

Bruce H. Matson, Trustee
c/o Christopher L. Perkins
LeClair Ryan
P O Box 2499
Richmond, VA  23218-2499

Peter J. Barrett, Trustee
c/o Jeremy S. Williams
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA  23219

South Anna, Inc.
c/o Christopher Julian Hoctor
Moran Reeves & Conn PC
100 Shockoe Slip, 4th Floor
Richmond, VA  23219

Stephanie Jeter Tumlin
c/o Christopher Julian Hoctor
Moran Reeves & Conn PC
100 Shockoe Slip, 4th Floor
Richmond, VA  23219